1:25-CV-15318

AMENDED CLASS ACTION COMPLAINT
(Including 2025 Federal Tax Sale Ruling)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE PEOPLE TRANSACTION FUND, COOK COUNTY SENIORS, HOWARD RAY, EDIE JACOBS
and all similarly situated homeowners,
Plaintiffs,

v.

COOK COUNTY, ILLINOIS.
TONI PRECKWINKLE, President of Cook County.
ALL MEMBERS OF THE COOK COUNTY BOARD OF COMMISSIONERS.
FRITZ KAEGI, Cook County Assessor.
MARIA PAPPAS, Cook County Treasurer.
LARRY ROGER JR, Cook County Board of Review
Monica Gordon, Cook County Clerk
and other elected officials responsible for property taxation,
Defendants. (also see parties' section III #10)



**FILED**

**DEC 29 2025** JKS

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

CLASS ACTION COMPLAINT

## I. INTRODUCTION

1.      Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment, and related constitutional provisions to challenge unconstitutional, arbitrary, and discriminatory property tax assessment and enforcement practices in Cook County, Illinois.

2.      These practices disproportionately burden Black communities, resulting in unequal tax treatment, loss of wealth, and heightened risk of displacement.

3.      Plaintiffs seek injunctive relief, restitution, refunds, damages, systemic reform of Cook County's property tax system, and the appointment of a Court-Appointed Special Master to conduct a forensic audit.

4.      Plaintiffs further allege that Cook County has diverted or misallocated property tax revenues toward unauthorized non-transparent expenditures, including but not limited to sanctuary-related programs, emergency housing, and inflated rental subsidies, without adequate oversight.

5.      Plaintiffs rely on a 2025 federal ruling from this Court declaring Cook County's tax-sale foreclosure system unconstitutional under the Fifth Amendment Takings Clause and the Eighth Amendment Excessive Fines Clause.

6.      6. Plaintiffs allege a pattern of racial disparity in assessment practices, including instances where County officials acknowledged assessment errors affecting non-Black communities following flooding, while similar flooding in predominantly Black neighborhoods was treated differently and attributed to infrastructure issues, resulting in unequal tax outcomes.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.

8. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in this District and the events giving rise to these claims occurred within Cook County, Illinois.

## III. PARTIES

9.    Plaintiffs are United States citizens residing in Cook County, specifically within predominantly Black communities that have been subjected to disproportionately higher property tax assessments and increases compared to non-Black areas, resulting in disparate financial impact and discriminatory economic burden.

10.    Defendants previously listed and including Commissioners (**Tara Stamps-District 1,Micheal Scott -District 2,Bill Lowry-District3,Stanley Moore-District 4,Kisha McCaskill District 5,Donna Miller-District 6,alma E Anaya-District 7,Jessica Vasquez-District 8,Maggie Trevor-District 9,Bridget Gainer-District10, John P Daley-District 11,Bridget Degnen-District 12,Josina Morita-District 13,Scott R Britton- District 14,Kevin B Morrison-District 15,Frank Aguilar-District 16,Sean M Morrison-District17**) are the governmental entities and elected officials responsible for the assessment, collection, enforcement, and allocation of property taxes in Cook County.

## IV. CLASS ALLEGATIONS

11. Plaintiffs bring this action on behalf of a class consisting of all homeowners in predominantly Black neighborhoods of Cook County who experienced unjustified and disproportionate property tax increases.

12. The class is so numerous that joinder of all members is impracticable.

13. Common questions of law and fact include whether Cook County's assessment and enforcement regime violates the Equal Protection Clause, Due Process Clause, and other constitutional protections.

## V. FACTUAL ALLEGATIONS

14.    Plaintiffs are long-term homeowners whose property taxes increased dramatically—often from approximately $700 to $1,000 or more annually—without any corresponding increase in market value or property improvements.

15.    These increases have disproportionately affected minority neighborhoods, particularly predominantly Black communities.

16.    Cook County officials publicly stated that tax increases were necessary due to commercial property value shifts and business departures, yet comparable tax relief was not provided to residential taxpayers when commercial activity was strong.

17.    Cook County received funding and authority to implement reassessment and equity programs but failed to conduct proper audits or equitable evaluations.

18.    Plaintiffs reasonably believe property tax revenues were misallocated or diverted without transparency or judicial oversight.

19.    Plaintiffs seek the appointment of a Court-Appointed Special Master to determine whether tax revenues were improperly diverted and whether assessment practices comply with constitutional requirements.

## . V.A. Comparative Disparate Treatment and Arbitrary Enforcement

20. During flood-related events impacting predominantly non-Black communities, including the **New Trier area of Cook County**, Defendants publicly acknowledged that flooding and floodplain conditions materially affected residential property values. In response, County officials implemented corrective measures, including **assessment reductions, certificates of correction, and other forms of assessment relief,** recognizing that flood risk diminished fair market value.

21. By contrast, when **comparable and widespread flooding** affected predominantly Black neighborhoods on the **West and South Sides of Chicago**, Defendants declined to provide similar assessment relief. Instead of recognizing residential flood damage as a basis for reduced property values, Defendants attributed the impacts of flooding to generalized **"infrastructure damage,"** while allowing residential assessments to remain inflated or increase.

22. This inconsistent treatment of similarly situated communities demonstrates **arbitrary and unequal enforcement of property tax laws.** Flooding that justified assessment relief in non-Black communities was disregarded as a valuation factor in predominantly Black neighborhoods, despite comparable damage to homes, basements, and residential structures.

23. Defendants' disparate treatment was compounded by their decision to allocate the **overwhelming majority of approximately $426 million in federal disaster recovery funds** toward infrastructure projects, while allocating only a minimal portion to **direct homeowner repairs** in flood-impacted Black communities.

24. By avoiding formal recognition of widespread residential flood damage in predominantly Black neighborhoods, Defendants **shielded assessed property values from mandatory downward adjustment,** thereby preserving property tax revenue. This policy choice created a **financial conflict of interest,** as Defendants simultaneously controlled disaster recovery classifications and benefited from maintaining inflated assessments.

25. As a result, similarly, situated homeowners were treated differently based on geographic location and racial composition of their communities. Flood damage that lowered assessments in non-Black communities was used to justify higher tax burdens in Black communities, even where homes suffered comparable or greater harm.

Defendants acted in concert with municipal entities and other governmental actors, the identities of whom will be ascertained through discovery

26. Defendants' actions constitute **arbitrary, irrational, and discriminatory government conduct,** violating the **Equal Protection Clause** and **Substantive Due Process Clause of the Fourteenth Amendment,** and giving rise to liability under **42 U.S.C. § 1983.**

## VI. NEW LEGAL AUTHORITY – 2025 FEDERAL RULING

23. On December 9, 2025, a federal judge in the Northern District of Illinois held that Cook County's tax-sale foreclosure system violates the Fifth Amendment Takings Clause and the Eighth Amendment Excessive Fines Clause.
24. The ruling established that Cook County's tax enforcement practices unconstitutionally permit the taking of property value beyond the amount lawfully owed.
25. Plaintiffs allege that Cook County's discriminatory assessment practices, when combined with the unconstitutional foreclosure system, operate together to strip homeowners—particularly in Black communities—of wealth without due process.
26. President Donald J. Trump is identified as a potential fact witness based on prior public statements concerning alleged fiscal irregularities involving Cook County and the City of Chicago.

## VII. CAUSES OF ACTION

COUNT I – Equal Protection (Fourteenth Amendment)
27. Defendants' assessment practices disproportionately burden Black homeowners without a rational basis.

COUNT II – Due Process (Fourteenth Amendment)
28. Arbitrary and non-transparent assessments violate procedural and substantive due process.

COUNT III – Civil Rights Violations (42 U.S.C. § 1983)
29. Defendants' actions constitute deprivation of constitutional rights under color of state law.

COUNT IV – Takings & Excessive Fines (Fifth and Eighth Amendments)
30. Defendants' cumulative tax and enforcement scheme threatens unconstitutional forfeiture of equity beyond lawful tax debt.

## VIII. REQUESTED RELIEF

31. Issue a Preliminary and Permanent Injunction halting unconstitutional tax enforcement.
32. Appoint a Court-Appointed Special Master to conduct an independent forensic audit.
33. Order a full accounting of diverted or misallocated tax revenues.
34. Award refunds and restitution to affected homeowners.
35. Certify this action as a Class Action.
36. Award compensatory and punitive damages.
37. Award attorneys' fees and costs; and
38. Grant such other relief as the Court deems just and proper.

39. Oder the County and citizens to do a study on the best way to assess homes

## IX. JURY DEMAND

39. Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Howard Ray
Edie Jacobs